Good morning, and may it please the Court, Marita Rietveld on behalf of Officers Nelson Martinez and Wesson Ismail. I'll reserve five minutes for rebuttal. It's pronounced Rietveld? Correct. We respectfully request this Court reverse the District Court and find out... Counsel, can you speak up just a little bit or just the microphones? Yes. Reverse the District Court and find the officers were entitled to qualified immunity because the constitutional violation was not clearly established. Plaintiff did not meet her burden to identify a case by the Supreme Court, the Ninth Circuit, or a consensus of sister circuit courts, showing that Officer Martinez's comment to her violated the First Amendment. You're not going to fight the law of the case. In other words, you accept the constitutional violation, that the remark was actually a threat, and that may frustrate you, but you're starting with that premise. Exactly. The Ninth Circuit already found that, looking at the allegations in the late most favorable to plaintiff, that the Officer Martinez's comment was a threat. However, an officer cannot be expected to know what a District Court judge did not know, and here the District Court originally found there was no constitutional violation. To put it sort of most starkly against you, wouldn't any officer know they can't threaten to arrest a rape victim who's saying, please, I want access to justice, I want my rapist to be arrested? Wouldn't any officer know you can't threaten that person, threaten them with an arrest without probable cause? How do you want to fight that? Well, I would say that's not the question because both the Ninth Circuit and the Supreme Court are clear that the qualified immunity inquiry has to be undertaken in light of the specific context of the case. Well, not if it's an obvious violation, right? Do you need a case on all fours to tell an officer, to give an officer sufficient notice that threatening to arrest somebody for exercising their constitutional rights is not permissible? No one so far, the plaintiff and the District Court, have not asserted that this was an obvious violation. This was a very unusual case because what we had was a member of the public, the victim, who was seeking to press charges against her attacker, and the officer informed her that if the third party pressed charges against her, he would take, the officer would take her into custody. The qualified immunity question inquiry requires us to look at a precedent and find that the, look not at the exact, we don't need a case that is exactly on all fours, but we need some kind of comparable circumstances, and here neither the plaintiff nor the District Court identified any case where, well, but I guess the problem that I have with your argument is that it relies very much on an issue that a prior panel has already conclusively decided against you, and that is whether the officer's conduct, taking the facts in the light most favorable to the plaintiff's allegation at this point, which we must do, that that constitutes a threat. That would chill a person of ordinary firmness from exercising their rights, so we have to start with that. Absolutely. So then the question is, is it all right to threaten to take somebody to jail for the exercise of their constitutional rights? I don't think, I guess my argument is that that's not the question. The question, the qualified immunity inquiry has to be, look at the specific context of the case, and if you look at the District Court's order in the, when it initially granted the motion to dismiss, the court said, Officer Martinez told Sherr, if Bravo chose to press charges, she would also be arrested. He did not tell her that if she chose to press charges, she would be arrested. While Sherr might have believed these statements to be interchangeable, they are not. Ultimately, I think that gets to the key issue here, because I think it's fair to say that you can't threaten to arrest somebody for their exercise of their constitutional rights. The question is that, is that what happened here? Or is it that you're, that Officer Martinez told Ms. Sherr that if somebody else exercises his rights, I will have to do this other thing? Exactly, and that is what the District Court initially found. I don't think that it's fair to say this is an obvious violation, when the District Court itself found that this was not an obvious violation, in fact, and this was clearly the subject of reasonable debate, because the Ninth Circuit and a reasonable District Court found differently. This is, the narrow question is whether there's a violation of the First Amendment under comparable circumstances. Plaintiffs relied primarily on broadhand becry, which is a case involving a prisoner who made a complaint about a corrections officer, and a prison official warned the prisoner in writing to be careful what you write. The Ninth Circuit found this implied threat was retaliation. That, the only overlap between that case and our case is basically a little bit of what you're seeing, that there's a implied threat to a plaintiff petitioning for redress of grievance, but the Supreme Court and the Ninth Circuit are clear there has to be more than that sort of basic overlap, and both parties cite Rousseau v. Haugen, which I think is instructive in illuminating what the qualified immunity inquiry requires of the court. That case involved a defendant police officer who shot a suspected armed burglar, as the burglar physically resisted arrest and then fled in his vehicle in the midst of other civilians and police officers. The question was not whether the use of force violates the Fourth Amendment if it is excessive under objective standards of reasonableness. The inquiry is, quote, whether to shoot a disturbed felon set on avoiding capture through vehicular flight when persons in the immediate area are at risk from that flight. So just so, here applying the Supreme Court's explanation in Rousseau, the question is not whether threatening to arrest someone who is seeking to press charges against her attacker is, the question is not threatening whether a person seeking to press charges against her attacker violates the First Amendment. The question is whether when a member of the public seeks to press charges and arrest a third party, and the police officer tells her he will take her into custody if the third party presses charges against her, that violates the First Amendment. So what if he had told her if you exercise your rights, forget about Mr. Bravo, if you exercise your rights you will be arrested. Would that violate the First Amendment? Would that be clearly established even if there's not a case that specifically involves this I think under that scenario the court and the plaintiff could argue that's an obvious case. Here this was very unusual circumstances and it was what the officer did was not threaten to arrest her but say you both have the right to press charges, lots of emotions running high here, if you press charges he might decide to press charges, and if that happens I'm taking you both to the jail. And while you don't need a case that is specifically addressing all those facts you do need some kind of comparable circumstances. Is that what happened though that the officer said if you press charges and he decides to press charges you have to we have to take you both to jail? I believe she said. I don't think that's what happened. I'm looking at the prior Ninth Circuit panel it says Sher had plausibly alleged that Martinez's statement that she would go to jail was a threat, not a statement of law, given that Bravo had already told Officer Martinez that he did not want to press charges. Yes, so the transcript is in the record and the officers went to the plaintiff and the attacker separately and asked each if they wanted to press charges. Ms. Sher said yes, Bravo said no, then Officer Martinez went to Ms. Sher and said to her again, do you want to press charges? And she said yes, and he said if Bravo pressed charges I'm gonna take you to jail. So that's what the transcript shows. I thought it was more there was a categorical statement, you are going to jail. She gets hysterical, says you mean right now? And he says yes. I believe the first sentence was like, but let's say the first panel, I guess here's my question. Yes or no, clearly established law informs, warns police that they cannot say to a victim that's called them, if you keep pressing charges against, say, the police chief, my boss, we're gonna arrest you and take you to jail. No, I'm asking you hypothetically, if cops respond, police citizen encounter, and there's someone who's got a legitimate gripe and it happens to be against the police chief and they look at the person say, you know, if you press charges against my boss we're gonna arrest you. I would say that's an obvious case. It's obvious, but wouldn't it also, right, okay, and wouldn't it also be clearly established on cases like Neves, where the Supreme Court has said that if you don't have probable cause, you can't chill someone's right to speak. You understand? So police have a defense, so I would think it's both obvious and it's clearly established that police cannot threaten to arrest when they don't have probable cause. Do you agree with that? Under Neves, yes. Okay, so if we're in that world, where do we see any probable cause to arrest the complainant, Ms. Scher? Where was the probable cause? I believe we're dealing, because we're dealing with a private person's arrest situation, and if there's a third-party exercises a right to a private person's arrest, the officer has to, is required by law to take them into custody. I think I'm assuming from the first decision that we know that the actual, the individual at the beginning, Bravo, had said I don't want to press charges. So there is no basis, no probable cause, because the other individual is claiming he wants to press charges. So let's fight that if that's wrong, but my question to you is, what's the probable cause if Bravo had just told Martinez I don't want to press charges? Well, Martinez said if he decides. Okay, so your argument turns on you being right as to the if, but in fact if the police just said to her we're going to arrest you, then you would agree with us? I think that's a clear case. A clearer or you would agree? I think it's an obvious case if the officer said we're going to arrest you if you press charges. Yeah. And here we have unusual set of facts, and I would part to... I agree with you, although just being devil's advocate even with the question, police frequently lie. Yeah. And so I'm not sure, is it clearly established that they can't lie? Could police frequently do lie when they respond to a 9-11 situation? Okay. And I'm not sure that the law is clearly established that they can't lie. I think that there are probably situations where police might lie strategically. Yes, we have someone else who saw you do it. They say that, it's a lie, but then the person... I think it's fact-specific, yes. Okay. What is the relevance of Mr. Bravo's, to your analysis analytically, what is the relevance of Mr. Bravo saying, I don't want to press charges? Yeah. Oh, well I think, you know, we're at this stage in the case where we're accepting all plaintiff's allegations and viewing them in the light most favorable to plaintiff. I think the complaint raises this general problem that, you know, the city prosecuted this attacker for domestic violence and convicted him. Why did the police not initially treat it as domestic violence? And the complaint asserts that the police erred. The question for this court is not whether the police violated state law or policy or procedure in not treating this as DV. The question is only whether there was a First Amendment violation. So I think that... But does it not inform how we interpret Martinez's following interaction with Ms. Scher that he knows that he had just spoken with Mr. Bravo a moment ago and he had said, I don't want to press charges? Well, the Ninth Circuit in their first, in their first opinion, found that it was relevant because they took that allegation into account in determining that it was an implied threat. Because while Bravo could have changed his mind if he heard that she decided to press charges, the allegation was that the transcript shows that he initially had decided not to press charges. And so the court took those factual circumstances into account in determining that Officer Martinez maybe strategically was telling her for some reason that Bravo might still decide to press charges, that it was a possibility, but that that informed their conclusion that it was a threat. So I think it's relevant in terms of the first prong of the qualified immunity analysis, but not the second prong, which is whether there's any prior precedent addressing these facts. And on that note, I would say it wasn't obvious to a reasonable officer that Officer Martinez's comment violated clearly established law, and I'll reserve my time for rebuttal. You're actually over time, but our questions actually took you over your time, so I'll put three minutes back on the clock for your rebuttal. Good morning, Counsel. Good morning, Your Honors. Brenton Nickenhenz from the Law Office of Jury Steering on behalf of FOE. So I'd like to start off by talking about the need for specificity in the context of qualified immunity. So the Supreme Court in recent years has issued a series of precariums, and they've cautioned courts not to define the law too generally. Too high of a level of generality. So does this have to fall within the realm of this is obvious in order for you to prevail, or do you have a case that you think is most closely analogous to the facts? I don't think it has to fall within the realm of the obvious case, but I think there is a strong argument that it is one of those obvious cases. Did you make that argument in the brief, and if so, what page? No, I did not. I did not make that argument in the brief. So we're not, that's not the world we're in? I guess not, but I don't think it's necessary. So what's the case? So we have, so in order for law to be clearly established, right, I wanted to... The question was, what's your strongest case that gives fair warning to police that when they respond to a domestic violation, we know they're supposed to separate the two people, they do, clearly they're supposed to speak to them, but what case says at that moment what they can or can't tell the victim? Our strongest case, under the context of this case, is Brodheim, because that's the case that establishes that not only... That's not talking to police, that's talking to prison officials. Right. So do you have any case, anywhere, state or federal, that has ever said to officers who respond to a 9-11 what they can or can't say to the aggressor or the victim? Yes or no? No, Your Honor. Okay, that's a problem, isn't it? No, it's not, because it depends on the context of the case. So what I was getting at before is... But how does context inform police in immediate emergency situations? In an immediate emergency situation would be a very different situation. But this was. They have her on the steps, they have the other fellow away, and they're both hysterical, or she certainly is. These are two different situations. I'm asking you, what is it that a police officer cannot say to a victim? They cannot say, finish the sentence. You cannot say, if you press charges, you're going to jail. And that's what he said here. That is exactly what he said. Now, so I disagree with the assessment that this is an emergency. That's maybe an interpretation, right? I mean, another view would be, he said that there's a, you know, there's, if Mr. Bravo presses charges, then I would have to arrest you. That would still be an implied threat. That's a misstatement of what the law is, and that would be under the circumstances. The misstatement, why? Because that's not what the law requires. It does not require the officer to arrest him, to arrest her, if Mr. Bravo decides he wants to press charges. Under the facts of this case, she's beat up really bad. Mr. Bravo is a large man, very physically capable, and my client, bloody, bruised, obviously not the aggressor. We have a statute in California that says that the police should ascertain who the dominant aggressor was and arrest them. Is that a constitutional violation or just a mistake of state law? That is just one fact that goes to explaining why it's unreasonable for the officer to think that it would be lawful. A violation of that statute in itself, of course, is not a constitutional violation. I mean, what if the officer had come to her and said, listen, I'm just showing up here. You're clearly in way worse shape than he is. Nonetheless, he's saying that you initiated this. I wasn't there. I don't know who to believe. I will arrest both of you, and we'll figure this out later. He's not saying he wants to press charges now. I asked him that. He's not saying that, but if he does decide to do that, if he wants to do that, I'm going to have to do this because you both were clearly in a fight, and I don't know who's responsible right now. Is that unlawful to say that? If you phrased it in a way that sounds less like a threat, then I suppose that would weigh against the First Amendment violation. If he actually arrested her on that basis, we'd be looking at a Fourth Amendment violation, though. I'm just trying to figure out what's doing the work in this case, because there's a few things going on here, right? There's Bravo saying, I don't want to press charges, and then the statements later, which seem to, you know, at least plausibly read in your favor, contradict that or suggest a different state of affairs that might actually be true. That's one feature of this case. Another feature of this case are just some of the more, you know, definitive statements. You will be arrested type statements. Right. What do you think is the thing that's doing the work in all of this? The way you're asking me what's doing the work, what's the most important fact? I think that's the way I'm interpreting your question. I think it's the way that the officer said this to my client under the circumstances of that case, because she'd already indicated that she wanted to press charges. Once he said that, and knowing, as we do, objectively, he knew that that Mr. Bravo did not want to press charges, that evinces an intent in order to deter her from pressing charges. So that's what I think the way that he phrased it. It's a threat. That would be what's doing most of the work under the circumstances of this case. And as the prior panel concluded, I believe under the facts of this case, a reasonable jury could find that it was a threat. The Supreme Court's cases that require, like, a high degree of specificity, right, in the last 10 years they've almost all been excessive force cases. And this court cannot overlook that, because there were actually two cases in that time frame in which the Supreme Court vacated an award of qualified immunity. One of those cases was actually a First Amendment case, and I apologize to the court because I didn't cite this in my brief. I only found out about this yesterday. But the case is South v. Bauer, that's 585 U.S. 975 2018, and we have somebody... Did you give this opposing counsel before? No, I just found out about this, like... You found out seconds before you walked in here? Probably a couple hours ago. So why didn't you give it to opposing counsel? I'm sorry, Your Honor, and I apologize to opposing counsel. Is this case dispositive to your argument? I think it's illustrative. I don't think it's dispositive. If it was dispositive, you know, if it was raising a new argument or something like that, I probably would consider it waived. I think it's just an illustration of the arguments we've already made. And in that case, the fact that there was not a case directly on point did not stop the Supreme Court from vacating an award of qualified immunity. We have somebody who was... It was a First Amendment case. The woman was praying, and the officer said, you know, stop praying or we're going to arrest you. And it's similar enough to illustrate the fact that there's not a case directly on point doesn't mean necessarily that the court is going to jump to... But testing that, like in the case you cited and relied on before, Brodheim, there is no reason officers would tell someone not to pray. And there is no reason a prison official would tell someone don't write out a grievance. But you could easily think that there's a reason for police officers responding to domestic violence to see two people separated, one much more injured than the other. That's clear. But the other one perhaps injured. And the officers would say, you know, it's for a district attorney to decide. We've seen violence here. We aren't supposed to figure it out. We will arrest you both. Is there clearly established law that says no? Or am I not being fair to the facts of the case? I think you're going to have to assume some of the facts in their favor in order to get that interpretation. And I don't... There's no way to construe that there were any aggressive marks on him at all. No, not without taking them at their word and construing facts in their favor. Because I don't quite understand the relevance of him saying I'm not going to press charges. It may have relevance under California law, but in domestic violence situations, police very specifically do not defer to a victim saying I don't want to press charges. So they're there and they assess two angry, physically fighting people, one maybe the other. And I'm just trying, if we're going to announce a clearly established rule, we have to be able to tell officers in that exact situation what can you not say to the more obvious victim. So to go to your first question there, what was the relevance of him saying he didn't want to press charges? My understanding is that goes to the officer's intent, because at that point he can't say he doesn't have any plausible deniability that it was just a mistake. He knew that the other guy was not pressing charges. So that's an evidence of his intent to chill her speech when she wanted to press charges. And to your other question about what can they not say. So there's, he cannot threaten her for exercising her right to petition the government for, to redress grievances. What constitutes a threat? That could be a fact issue under certain circumstances. It could be different under this case. Let me ask you this counsel, because now you're kind of engaging a lot in the facts again, isn't a lot of this work already done by the prior panel, finding that if these allegations are construed as true, which we must do at this stage, then there was already a threat? I agree, Your Honor. I think that it is a settled issue and I think it's hard to separate. If the court has already determined that it's a threat, it does seem very straightforward that you can't threaten somebody for exercising their First Amendment right. And that's why it seems like your easiest argument is to have this case fall within the obviousness land. And you're not giving up on that, are you? No, I'm not, Your Honor. I do, I would argue that it is, it is obvious that the, the body of case law around obvious violations, as you are surely aware, is very sparse. There are not many example cases and that's not something that, you know, that's not the first thing that you would always rely on. But I think I could make that argument. It is very, it is obvious if it's a threat, and so it's, and it's established that it is a threat, as a matter of fact, it is a threat. A reasonable jury could find that. Yeah, it's obvious you cannot threaten somebody just because they're reporting a crime. Especially under the circumstances where you have somebody with these grievous injuries, with broken nose, facial fractures, blood everywhere, and you see the size disparity between them. It's definitely, it's definitely obvious under those circumstances. I am aware of a, well, I won't go into it. There, there are recent Supreme Court cases that discuss obviousness, though. There's, there's one that comes to my mind. Right, but it's a very complex area of law. I'm still a little unclear when you say you haven't given up on it. You didn't argue it in district court. You didn't argue it in briefs. Opposing counsel hasn't had an opportunity to reply to it. But you're, you're asserting obviousness now, here, up at the podium? Yes, Your Honor. If I'm being asked, I think that you could make that argument. That's not the first thing that I would go to, because that body of law is so small and so slim, and if you were trying to choose what to rely on, the first thing that you always go to is you, for qualified immunity, try to find a factually, you know, identical case. The obviousness cases, they're so, they're so diverse. They're so, they're dealing with so many different types of factors that are not really, you know, the fact that they're obvious is because, you know, they never come up. That's what makes them obvious, is they're sort of like these rare types of instances. So that wasn't like my first. And sadly, I mean, this situation comes up every single day all over the country. Police officers responding to domestic violence. Domestic violence, sure. So it's going to be very consequential what we write. Yes, it potentially could be. And I think that when it comes to a victim of a crime who is, you know, reporting a crime where they are, they're, they are obviously the victim, then yes, this, you know, this would be an obvious case in that context. If you're, but even, even, even if we consider that. So hypothetically, if, if Martinez has said, if Bravo presses charges, we will arrest you. That's okay for him to say. If Bravo presses charges, I thought that was okay for them to say. No, no, that would not be okay. If brought, that's, that's incorrect. And that's also, okay. All right. Why couldn't you say that? I thought he had to say that. As a matter of state law, though? That's right. If, that's right. If Bravo, if Bravo just says you hit him, however fanciful that seems, it's not us, it's the DA. That's okay. And I, right? With no further context, yes. Okay. Under the context of this case. But then if you victim press charges and it's against the, our police chief or, and we don't like that you're praying, that wouldn't be okay. Here, I'm worried that where we are is they say to her, if you press charges and they're thinking, we don't know who did the violence here. We just don't know. Therefore, we have to arrest you. Well, why, where is there clearly established wrong that says Martinez can't say that? Well, there, there's a body of case law in the circuit that described, that addresses these each little individual areas of law. So threats, right? Threats in retaliation for protected speech. What is, what constitutes petitioning activity? And, you know, those are the cases that we've cited. Brodheim, White, Antler. White, by the way. I'll tell you my biggest anxiety is because it would be so consequential when I researched, and just in Westlaw like you did, but state fed, state and federal databases. I have never found a single First Amendment retaliation case based on what police officers say to people that they're responding to. Couldn't find one. Did you find one? To, to victims? No. Or just to, to whenever they respond to a 9-11 and they say crazy things. They say threatening things. There is not a single case anywhere in the United States case law that says that that equals police retaliating against a First Amendment right. That's problematic for me. There, so in the, the case that I brought to your attention earlier, that was basically what the allegation was, and that was a case in which the Supreme Court. Which case? Oh, the one you, you just told us about. The, the, the, I'm sorry, South versus Bauer. Right, the one you just told us. Yes, that's the one that I'm referring to, the Supreme Court one. That would be an example of a case where, you know, the police were summoned, and the police, you know. Say don't pray. Yeah, they said if, if, if you pray, you're going to jail. There's, there's other things in that case, but that was sort of the big thing is that, you know, First Amendment, and. You're actually over time. Let me see if my colleagues have any additional questions. Right, you go ahead and wrap it up. I respectfully request that you confirm the lower court's ruling. Thank you. Pelley's counsel asserted that Officer Martinez said if you press charges, you're going to jail to missure. But what makes this case complicated is that's not what he said. He said if Bravo impresses charges, I'm gonna take you to custody, and you're going to jail. Could the statements be construed to suggest that? That is how the Ninth Circuit has construed them. They construed that basically the timing of informing missure of that private person's arrest procedure constitute an implied threat. But it makes a huge difference, though, that before he said that, before Officer Martinez said that Bravo had declined to press charges. Doesn't that make all the difference in the world? It's not a mutual situation where they don't know. That was a fact that absolutely informed the Ninth Circuit, and they focus on that, so yes. But does it inform the analysis at the clearly established stage as well? No, I don't think so, because this is not an obvious case. It's when an officer tells a member of the public seeking to press charges, not that he's going to arrest her, but that he makes an implied threat to arrest. There's not even a case where a police officer made an implied threat to arrest someone who is petitioning for redress of grievance, let alone a case where an officer talked about the private person's arrest procedure and said, if something happens, then I'll take you into custody. This is not an obvious case as demonstrated by the fact that the District Court itself struggled as to whether this was a First Amendment violation, and under those circumstances where the District Court and the Ninth Circuit disagree, and there's no case law anywhere in the country, a police officer, a reasonable police officer, could not be unnoticed that this was a violation. When you were up before, it was thoughtful of you to concede several answers to questions. You said there actually would be a moment of obviousness where a police officer couldn't threaten to arrest someone if the motivation was to suppress their First Amendment rights, such as praying. I think you agreed that that would be true. So if you did, and there is no case law saying that yet, what would you say if we wrote a decision that said, qualified immunity here because there is no case law, but now we are putting down a mark. Police officers can never threaten somebody when they're motivated to suppress their speech, rather than having probable cause. Would you agree with that statement? I would agree that there is a dearth of case law on this issue. I know, but would you agree that that would be a correct and valuable statement to make going forward, even if Martinez didn't have that warning yet in the case law? Let me just ask this as to the motivation, because I believe that... Motivated to suppress her effort to get her rapist removed from her presence. Yes, that does sound like a valuable case law to clarify what the First Amendment violation would be. Does the court have any other questions? Any further questions? All right, thank you very much for both sides for your argument this morning. It's been very helpful in this difficult case. The matter is submitted, and we are in recess until tomorrow morning. Thank you. All rise. This court for this session stands adjourned.
judges: Higginson, NGUYEN, BRESS